**Judson C. BREWER, Plaintiff,**

v.

**QUAKER STATE OIL REFINING CORPORATION and Quaker State Corporation, Defendants.**

**Civ. A. No. 93–72 Erie.**

United States District Court, W.D. Pennsylvania.

Feb. 1, 1995.

**676**

Samuel J. Cordes, Ogg, Jones, DeSimone & Ignelzi, Pittsburgh, PA, for plaintiff Judson C. Brewer.

Peter D. Post, Brooke Bashore–Smith, Reed, Smith, Shaw & McClay, Pittsburgh, PA, for defendants Quaker State Oil Refining Corp., Quaker State Corp.

1. Among other things, ADEA and the Elliott–Larsen Civil Rights Act prohibit employers from discharging or otherwise discriminating against individuals with respect to compensation, terms,

*MEMORANDUM OPINION*
*AND ORDER*

McLAUGHLIN, District Judge.

■ Plaintiff Judson C. Brewer ("Brewer") was employed as a sales representative for Quaker State Corporation until his termination from the company in 1992 at the age of 53. As a result of his termination, Brewer has filed this action against Defendants Quaker State Corporation and Quaker State Oil Refining Corporation (collectively "Quaker State"), alleging that Defendants' actions violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and Michigan's anti-discrimination statute, the Elliott–Larsen Civil Rights Act, Mich. Comp.Laws §§ 37.2101 *et seq.*[1] This Court has jurisdiction over Plaintiff's claims pursuant to 29 U.S.C. § 626(c)(1), 28 U.S.C. §§ 1331 and 1343(a)(4), and pendent and supplemental jurisdiction.

Presently before the Court is Defendants' Motion for Summary Judgment on both counts. For the reasons set forth below, Defendants' motion will be granted.

## I. BACKGROUND

Not surprisingly, the parties differ in their opinions of Brewer's performance while employed at Quaker State. Brewer argues that his job performance was generally satisfactory and that his termination for alleged poor performance was a mere pretext for discrimination based on his age. Brewer further submits that many complaints about his performance were exaggerated and that his discharge was orchestrated in accordance with a company policy favoring a younger work force. Defendants maintain that Brewer was fired only after extended probation for recurring work problems. They also claim that Brewer was given repeated warnings that he would be terminated if his performance did not improve. Notwithstanding this significant difference in perspective, it appears that the following facts are undisputed.

conditions, or privileges of employment because of the individual's age. 29 U.S.C. § 623(a)(1); Mich.Comp.Laws § 37.2202(1)(a).

Brewer was hired by Quaker State in 1968 as a sales representative. For most of his career, Brewer operated out of Quaker State's Pittsburgh Division. In 1989, however, the Pittsburgh office was closed and Brewer accepted a transfer to Quaker State's Detroit Division where he remained until his discharge in March of 1992. (Brewer Deposition at 23–25, 54, 56.)

While in the Pittsburgh Division, Brewer was supervised by two different division managers. From roughly 1973 to 1987, Brewer reported to Bruce Drummond. (*Id.* at 23, 25; Drummond Deposition at 5.) From approximately 1987 to 1989, Brewer reported to Michael O'Donnell. (Brewer Depo. at 25; O'Donnell Depo. at 11–13, 21.) During their respective tenures, both Drummond and O'Donnell encountered certain problems with Brewer's performance and even placed Brewer on probation. (Brewer Depo. at 32–36; Drummond Depo. at 20–22; O'Donnell Depo. at 22–23.) For example, Drummond testified at his deposition that he received several calls from Brewer's clients stating that they had run out of oil or had not seen their sales representative in some time. (Drummond Depo. at 17–20.) In addition, Drummond placed Brewer on verbal probation on one occasion after Brewer misinformed Drummond as to his whereabouts and was found out of his sales territory during work hours. (Drummond Depo. at 20–22.) Brewer was advised that, if he was ever again found in a location different from what his itinerary indicated, he would be terminated. (*Id.* at 21.)

Further problems with Brewer's work performance were documented while he was under O'Donnell's management. In January of 1989, O'Donnell confronted Plaintiff and placed him on a ninety-day probationary period for various problems, including customer complaints about continually running out of oil and never seeing their sales representative, poor follow-up with projects, inaccurate and incomplete paperwork, short work days, and lack of organization. O'Donnell warned Brewer that Brewer would be fired if he did not permanently improve in these areas. (Brewer Depo. at 34–36 and Ex. 1.) Shortly after Brewer completed this probationary pe-

riod, the Pittsburgh Division was closed and Brewer transferred to the Detroit Division where he replaced a salesman in his mid-twenties. (Brewer Depo. at 51–54, 61, and Ex. 12.)

Upon being transferred to Detroit, Brewer came under the supervision of District Manager Paul Pfauser, who ultimately recommended Brewer's termination. (Brewer Depo. at 54.) In his first yearly evaluation under Pfauser, Plaintiff was rated as generally competent, with lower marks for responsibility and planning. Brewer was advised by Pfauser that he needed to work more closely with his accounts and set higher standards for himself. (Brewer Depo. Ex. 12.)

In May of 1991, shortly before his second annual review, Pfauser notified Brewer about various areas in which he needed to improve, such as spending more time in the field and less in the office, making more efficient use of his daily schedule to include more client prospecting, following up with requests from accounts and management, improving the timeliness and completeness of his sales reports, and eliminating problems with orders and missed messages. (Brewer Depo. Ex. 2.) One month later, Brewer received his formal evaluation in which he received marginal or unacceptable ratings in all categories. (Brewer Depo. Ex. 13.) In terms of an overall evaluation, Pfauser commented that Brewer "[n]eeds to get back on track. Work effort has fallen off since last appraisal and Judd has not made a strong effort to aid in that slide. Closer supervision and training is required." (*Id.*)

By August, 1991, Pfauser was again addressing certain alleged problems with Brewer's work performance, such as poor follow-up on customer requests, failure to return calls from accounts, too little time spent in his territory, and late and unclear reports. (Brewer Depo. Ex. 4.) Pfauser sent Brewer a memo on or around August 11, 1991 which outlined these concerns and stated, in relevant part:

> These represent serious problems which must be addressed for you to remain employed by Quaker State. As you know, this is not the first time these problems have been brought to your attention. In

the past, when performance problems have been discussed, you have made an effort to bring your work level up, but it does not continue for very long. This up and down performance will no longer be tolerated and improvement must be permanent.

(*Id.*) (emphasis added.) Plaintiff was placed on a 90–day probationary period and prepared a "self development plan" to help him improve his performance. (Brewer Depo. Ex. 5.) Pfauser also established a plan to help Brewer perform better.

Pfauser and Brewer met periodically thereafter to discuss Brewer's progress. (Brewer Depo. Ex. 6, 7 and 9.) On September 9, 1991, Pfauser documented continued problems, including lack of proper customer contact, late and unsigned documentation, and unclear or improper order forms. Pfauser noted that Plaintiff was "not moving in a positive direction" and warned that he had "60 days left to increase his effort or he will be let go." Brewer acknowledged these comments by signing the report, but offered no additional comments of his own. (Brewer Depo. Ex. 6.)

Similar problems were discussed with Brewer again on September 23, 1991, including Brewer's apparently short work days and too few customer contacts. Plaintiff was again warned that he had 50 days to improve his performance or he would be terminated. Again, Brewer acknowledged these comments by signing the report, but provided no remarks of his own. (Brewer Depo. Ex. 7.)

At the end of the ninety-day probation, Brewer met with Pfauser, who once again raised certain concerns about Brewer's performance, including short working days and failure to adequately communicate with customers. (Brewer Depo. Ex. 9.) Notwithstanding these problems, Pfauser decided to extend Plaintiff's probationary period an additional 60 days. (Brewer Depo. at 142–43.) However, on February 18, 1992, Pfauser again documented alleged work deficiencies

in a memorandum sent to Brewer. Among other things, the memorandum noted that, in the past nine months, Quaker State had received over 13 customer complaints regarding Brewer. These included complaints of customers running out of oil, Brewer's misprocessing of orders or promotional arrangements, failure to advise accounts of credit problems, and the like. (Brewer Depo. Ex. 10.) Although Brewer commented on the report to the effect that his performance had improved, he did not dispute any of the alleged problems. (Brewer Depo. Ex. 11.) Following this episode, Pfauser requested approval to terminate Brewer. Approval was granted and Brewer was discharged in March of 1992. (Pfauser Depo. Ex. 31; Brewer Depo. Ex. 14.)

■ Defendants move for summary judgment on two grounds. First, they argue that Plaintiff cannot establish a prima facie case of age discrimination because there is insufficient evidence to support a reasonable finding that Brewer was qualified for the position of sales representative. Second, Defendants argue that, even if a prima facie showing of age discrimination is made out, Defendants have articulated a legitimate non-discriminatory reason for Brewer's termination. Thus, under the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Ctr. v. Hicks*, — U.S. —, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) and their progeny,[2] Plaintiff bears the burden of demonstrating that Quaker State's articulated reasons for his termination are merely pretextual and that the real reason was discriminatory. Defendants maintain that the record lacks sufficient evidence to support a reasonable finding that Brewer's discharge was based on

**2.** Although this case is premised on alleged age discrimination, reference is made throughout this opinion to Title VII cases, as the analysis used in describing the evidentiary burdens in Title VII cases is often used in ADEA cases. *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 n.

10 (3d Cir.1994); *Seman v. Coplay Cement Co.*, 26 F.3d 428, 432 n. 7 (3d Cir.1994); *Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393, 1396 (3d Cir.), *cert. denied*, 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984).

age. (Mem. in Support of Defendants' Mot. for Summary Judgment at 28–39.)

In his brief in opposition to summary judgment, Plaintiff has outlined a number of factors which he believes constitute circumstantial evidence of an age discrimination policy at Quaker State. Brewer submits that this evidence is sufficient to create a genuine issue of fact as to whether his termination was age-related. (Plaintiff's Br. in Opp. at 10–16.)

First, Brewer points to a company newsletter published in April of 1990 in which Quaker State's chairman and CEO, Jack Corn, commented that his "seconds-in-command" are "two of our star young men in their mid–40's. That age group is our future." (Plaintiff's Append. at Tab J.) Plaintiff alleges that, following this publication, a company policy favoring a younger work force was put into effect which eventually influenced the decision to terminate Plaintiff. (Complaint ¶ 12.)

It is also alleged that one of Quaker State's regional managers, Deno Debacco, made a comment to Bruce Drummond following the closing of the Pittsburgh Division to the effect that Debacco had "cleaned up" the "dead wood" in Pittsburgh. (Drummond Depo. at 42–43.) Plaintiff posits that the term "dead wood" denotes an older work force employed in the Pittsburgh Division. (Plaintiff's Br. in Opp. at 15–16.)

Brewer also claims that Pfauser was "coached" on how to terminate him effectively by Wanda Weaver, manager of employment and compensation at Quaker State's home office. Specifically, Plaintiff claims that Pfauser was instructed to "document as much as possible" and "identify specific deficiencies" in Brewer's performance. (Plaintiff's Append. at Tab H.) As evidence of this discriminatory intent, Plaintiff refers the Court to a memorandum sent by Weaver to Pfauser in August of 1991 which advised Pfauser on how to proceed with Brewer and purported to summarize Brewer's past evaluations. (*Id.*) The first page of the memorandum contains the following remarks by Weaver:

The performance plan that you outlined ... is excellent. It is important that you identify specific deficiencies [in Brewer's performance] and the results desired by management.

At this point in time, I would recommend that you identify specific monthly dates when you two can get together and discuss results over the previous thirty (30) days. The results of those meetings should be summarized in letter format and Judd should *sign* the letter to acknowledge receipt. It is also important that we provide Judd with written notice of action that will be taken if the problems are not corrected. I suggest summarizing your meeting of August 19, acknowledge receipt by Judd, and close the letter by stating, "I must emphasize to you that your failure to permanently improve your work performance may lead to more severe discipline, up to and including discharge."

Attached for your review is a brief summary of Judd's performance appraisals over the last 15 years. I am disappointed that action was not taken years ago to correct these problems. It is apparent from the performance appraisals that he has had ongoing performance problems throughout his employment history.

I am obviously concerned that we have to take this type of action after 23 years of employment. Also, Judd is 53 years old, which presents another problem. However, within the next ninety (90) days, it is extremely important for you to document as much as possible in the event his performance does not improve.

Please forward each letter for our personnel file in Oil City. I will stay in touch with you to see what progress has been made ...

\*    \*    \*    \*    \*    \*

(*Id.*) The second page of the Weaver memorandum contains the summary entitled "Performance Appraisals." Brewer claims that this "summary" emphasized only the most negative aspects of his evaluations, while ignoring the neutral or more positive aspects. Aside from this summary, the only other information listed on page two is Plaintiff's name, age (53) and years of service (23). (*Id.*)

Brewer contends that the foregoing factors evidence a discriminatory intent on the part of Quaker State. In addition, Brewer points to certain factors which he claims are inconsistent with a termination based on poor performance. For instance, Plaintiff points out that he was the only individual in his division to receive a bonus in 1990 and 1991 for exceeding sales quotas. (Plaintiff's Br. in Opp. at 29–30.) In addition, Plaintiff argues that his overall average rating for 1987 through 1990[3] was "3" out of a possible "5," which translates into "competent," by Quaker State's performance standards. Factoring in his evaluation for 1991, Plaintiff's overall average for 1987–1991 was 2.9. (*Id.* at 26–29.)

Finally, Brewer takes issue with several of Pfauser's allegations of poor performance. Brewer maintains that many of these incidents were simply "nitpicking" on the part of Pfauser, or were the result of petty misunderstandings, or were not actually problems at all. (*Id.* at 17–24; Brewer Depo. at 57–59; 62–63; 107–109; 132–33; 135–37; 141; 156–157.)

Brewer contends, based on the foregoing circumstantial evidence, that a jury could reasonably conclude that Quaker State's reasons for terminating him were merely pretextual. This, together with the elements of his prima facie case (Brewer submits) would permit a reasonable trier of fact to conclude that Quaker State acted for discriminatory purposes in terminating his employment. (Plaintiff's Br. in Opp. at 16–17.)

## II. *STANDARD OF REVIEW*

Entry of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute regarding a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party, of course, has the initial burden of demonstrating that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-moving party to demonstrate that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. All inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, when the record taken as a whole is such that it will not support a rational finding that an essential element of the nonmoving party's case exists, summary judgment must be entered for the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 341 (3d Cir.1990).

## III. *DISCUSSION*

### A. Plaintiff's ADEA Claim

The legal framework by which ADEA claims are analyzed is now well established. In a "pretext" age discrimination action under ADEA,[4] the plaintiff has the initial burden of establishing a prima facie

---

**3.** The record indicates that numerical evaluations were only assigned beginning in 1987.

**4.** The Court acknowledges that different legal analyses apply depending on whether a case is classified as a "mixed motives" case under *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), or a "pretext" case governed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. "Mixed motives" cases are those in which the plaintiff ultimately seeks to prove that the adverse employment deci-

sion resulted from a mixture of legitimate and discriminatory motives, whereas, in a pretext case, the plaintiff essentially argues that the employer's facially legitimate reasons were false and thus, not the real reason for its adverse employment decision. *See Armbruster v. Unisys Corp.*, 32 F.3d 768, 777–783 (3d Cir.1994). In the present action, both parties have proceeded on the assumption that this is a pretext case. The Court sees no reason to disagree and will likewise adopt this analysis.

case by demonstrating that he or she: (1) is a member of the protected group; (2) was qualified to perform the job at issue; (3) was discharged despite being qualified for the position; and (4) was replaced by another employee sufficiently younger to permit an inference of age discrimination. *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994); *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 792–93 (3d Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *Naas v. Westinghouse Elec. Corp.*, 818 F.Supp. 874, 877 (W.D.Pa.1993).

If these elements are demonstrated, a legal, rebuttable presumption of discrimination arises. If the elements are *not* capable of being demonstrated, the inference of discrimination never arises, and summary judgment for the employer is appropriate. *Naas, supra*, at 877.

■ Assuming that a plaintiff can demonstrate a prima facie case of discrimination, the defendant then has the burden of producing some legitimate, non-discriminatory explanation for the action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94; *Armbruster, supra*, at 778. If the defendant meets this burden of production, then any presumption of discrimination drops from the case, and the plaintiff must offer evidence tending to show that the defendant's explanation is a mere pretext for discrimination. *Burdine*, 450 U.S. at 254–56, 101 S.Ct. at 1094–95; *Armbruster, supra*, at 778.

■ The plaintiff's ultimate burden at trial will be to demonstrate by a fair preponderance of the evidence (1) that the employer's proffered explanation is pretextual, *and* (2) that the discriminatory motive was the true reason for the adverse action. If the factfinder does not believe defendant's explanation, such a finding—together with the elements of the prima facia case—*may* allow (but does not *require* ) the factfinder to infer the ultimate fact of intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 826 (3d Cir.1994); *Armbruster, supra*, at 783; *Seman v. Coplay Cement Co.*, 26 F.3d 428, 433 (3d Cir.1994). To prevail at trial, the plaintiff must per-

suade the fact finder that age *actually* played a role in the adverse employment decision and that it was a *determinative factor* in the outcome. *Armbruster, supra*, at 778 and n. 12; *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994) (citing *Hazen Paper Co. v. Biggins*, —— U.S. ——, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)).

The Court finds sufficient evidence in the record for Plaintiff to demonstrate a prima facia case of age discrimination. It is not disputed that Plaintiff is a member of a protected class, was discharged by Quaker State, and was ultimately replaced by an individual not within the protected class. Defendants challenge only the prima facia element of Plaintiff's qualification for the position of sales representative. They argue that Plaintiff was not qualified because he did not perform his job in accordance with Quaker State's reasonable expectations at the time of his discharge. (Def.Mem. in Support at 25–27.)

■ Although the standard in this Circuit is not entirely clear as to what a plaintiff must show in order to demonstrate the prima facie element of qualification, this Circuit has observed that "the burden of making out a prima facie case is not onerous." *Fowle v. C & C Cola, A Div. of ITT–Continental Baking Co.*, 868 F.2d 59, 65 (3d Cir.1989) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94; *see also Ezold v. Wolf, Block, Schorr and Solis–Cohen*, 983 F.2d 509, 523 (3d Cir.1992) (because the prima facie case is easily made out, it is rarely the focus of the ultimate disagreement), *cert. denied*, —— U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993). Recently, the Third Circuit has described the prima facie test as requiring a plaintiff to demonstrate that he "was qualified by training and experience for the job from which he was discharged." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 342 (3d Cir.1990). It has also been observed that an employer's claim that the plaintiff did not meet its performance expectations should not be addressed as part of the prima facie case:

Requiring plaintiff to prove, as part of her prima facie case, that she preclude even the possibility of dismissal for lack of qualification—based only on employers' expectations—would frustrate the purpose of the ADEA. It would require plaintiff, in effect, to prove pretext.

*Gelof v. Papineau,* 648 F.Supp. 912, 919 (D.Del.1986) (citations omitted), *aff'd in part, vacated and remanded on other grounds,* 829 F.2d 452 (3d Cir.1987); *see also Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 985 F.2d at 523 (where subjective qualification dispute exists, issue of qualification should often be resolved at second and third stages of *McDonnell Douglas/Burdine* analysis, in order to avoid putting too onerous a burden on the plaintiff in establishing prima facie case); *Jalil v. Avdel Corp.,* 873 F.2d 701, 707 (3d Cir.1989) (employer's claim that plaintiff was not qualified for position based on insubordination was not something plaintiff had to disprove as part of his prima facie case, but rather was more logically a defense to be raised by employer in response to prima facie case), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). To the extent that Brewer must demonstrate his basic qualification as a sales representative in establishing a prima facie case, the Court is satisfied that he has done so by virtue of his twenty-three years experience as a sales representative and the fact that he received a company bonus for exceeding his sales quota in 1990 and 1991.[5]

■ The Court also finds that Quaker State has produced evidence sufficient to satisfy its burden of production in articulating a legitimate, nondiscriminatory reason for Brewer's termination. There is ample evidence that Plaintiff's supervisors found chronic problems with certain areas of his work. Thus, the crucial issue for the Court is whether Plaintiff has produced evidence sufficient to withstand summary judgment on the ultimate issue of pretext. The Court is guided at this point by the Third Circuit's recent decision in *Fuentes v. Perskie,* 32 F.3d 759 (3d Cir.1994).

■ In *Fuentes,* the court specifically considered the evidence that an employment discrimination plaintiff—after successfully establishing a prima facie pretext case—must adduce in order to survive summary judgment when the defense offers a legitimate reason for its employment action. The court held that, in order to defeat a motion for summary judgment under these circumstances:

> the plaintiff generally must submit evidence which: (1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

32 F.3d at 762; *see also, Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Armbruster,* 32 F.3d at 783; *Ezold,* 983 F.2d at 523. The evidence may be circumstantial or direct in nature but, in any event, it must allow the finder of fact reasonably to infer that each of the employer's proffered reasons was either a *post hoc* fabrication, or otherwise did not actually motivate the employment action. *Fuentes, supra,* at 764. Moreover, in order to discredit the employer's proffered reasons, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, because the issue in dispute is not whether the employer is wise, shrewd, prudent or competent, but whether the employer acted with a discriminatory motive. *Id.* at 765. Rather, the plaintiff must demonstrate such

---

5. The Court acknowledges Defendants' position that Plaintiff received repeated performance criticisms during his career with Quaker State, and that Plaintiff's termination was not premised on his bottom-line gallonage sales. Nevertheless, there is evidence that Brewer was knowledgeable about his job and the products he sold, as reflected in more than one performance evaluation. (Brewer Depo. Ex. 12 and 13 and Plaintiff's Append. Tab I.) The Court takes no position here as to the significance of Plaintiff's experience or job knowledge (or his bottom-line sales) with respect to Plaintiff's ultimate burden of proving pretext, which is discussed in more detail below. The Court emphasizes that, at this point, it is acknowledging these factors only for purposes of determining that Plaintiff has made a prima facie showing of qualification for the position of sales representative.

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons that a reasonable factfinder could rationally find them unworthy of credence. *Id.* (citations omitted).

■ Under the foregoing standards, the Court finds insufficient evidence in this record to support a reasonable finding either that Quaker State's proffered reasons for Brewer's termination were fabrications, or that the true reason for Brewer's discharge was age discrimination. To begin, the statement by Jack Corn that "[the mid–40's] age group is our future" appears in the context of a Quaker State newsletter which discusses changes in top level executives and, more specifically, Corn's training his two "seconds-in-command" as future successors. More importantly, there is no evidence to support Plaintiff's allegation that, following Corn's statement, Quaker State adopted a policy favoring a younger work force, pursuant to which Plaintiff was fired. Pfauser testified that he could not recall ever seeing or hearing Corn's statement, and Brewer admitted at deposition that he had no evidence linking Pfauser in any way to the "age group" comment. Neither party alleges that Corn was responsible for, or even knew about, Plaintiff's termination. Thus, the Court regards Corn's statement as a stray remark, unconnected with and remote from the decision-making process which resulted in Brewer's discharge.[6] *See Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 983 F.2d at 545 ("[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decisional process are rarely given great weight, particularly if they were made temporally remote from the date of decision"); *c.f. Armbruster,* 32 F.3d at 783 (age-related statements could not be disposed of as "stray remarks" in pretext case where statements were made by decisionmakers and personnel immediately involved in allegedly discriminatory transfers, and where remarks were made contemporaneously with transfers or soon after corresponding reduction in force).

■ The Court next considers the alleged comment by Deno Debacco that he "cleaned up" the "dead wood" in Pittsburgh. Significantly, there is no evidence before the Court tending to show, as Plaintiff claims, that the work force in Pittsburgh was significantly older than in Quaker State's other divisions. It appears, therefore, that the term "dead wood" is age-neutral[7] and does not evidence any discriminatory policy on the part of Quaker State. Additionally, it is undisputed that Plaintiff was not terminated upon the closing of the Pittsburgh office, but was instead transferred to Detroit where he replaced a sales representative in his mid-twenties. In short, the Court finds nothing in Debacco's alleged remark to suggest that a policy of age discrimination existed at Quaker State which influenced Plaintiff's discharge.

■ Plaintiff's third piece of circumstantial evidence is the alleged "coaching" of Paul Pfauser by Wanda Weaver as illustrated by Weaver's August, 1991 memorandum. Brewer seems to place particular significance on (1) Weaver's instructions to "identify specific deficiencies," and "document as much as

---

**6.** Although Brewer cites *Pearson v. Quaker State Oil Refining Corp.,* Civil Action No. 91–53 Erie (W.D.Pa.1991) (Mencer, J.), as persuasive authority that Corn's statement reflects an age-biased policy at Quaker State, the Court finds that case to be distinguishable. In *Pearson,* the plaintiff was a top-level employee who had been directly involved with Corn on a professional basis. By contrast, there is simply no evidence here of any causal link between Corn's statement and Brewer's termination. Plaintiff's mere assertion that Corn's comment somehow influenced his discharge amounts to speculation and is insufficient to create a genuine issue of fact.

**7.** Defendants point out that the term "dead wood" is defined by *Webster's Ninth New Collegiate Dictionary* as "*useless* personnel or material"

(emphasis supplied). *See also The Random House Dictionary of the English Language,* (2d Ed.1987) (defining "dead wood" as "1. the dead branches on a tree; dead branches or trees. 2. useless or burdensome persons or things: *He cut the deadwood from his staff* ...."). · In fact, Plaintiff apparently used the term "dead wood" in this same context, when testifying about his customer prospect list:

My prospect list is second to none. The prospect list that I had was always up to date, and it was always being brought up to date. *If I had some dead wood that I had called on four or five times and I couldn't do anything with them, I took them off* ....

(Brewer Depo. at 157) (emphasis supplied.)

possible," and (2) her comment that "Judd is 53 years old, which presents another problem." Brewer notes that it is not explained in the documents why his age presents a "problem." He urges that a finder of fact could reasonably infer from these remarks a bias against older employees. (Plaintiff's Br. in Opp. to Defendant's Mot. for Summary Judgment, at 12–13.) [8]

■ Although the Court finds these statements slightly more probative than the Corn and Debacco statements, they are nevertheless insufficient to create a genuine issue as to whether Quaker State's proffered reason for Brewer's discharge was pretextual. When the Weaver memorandum is viewed in its entirety and in light of Brewer's apparent history of work problems, the remarks about documenting deficiencies take on less significance. The statement as to Brewer's age being a "problem," together with the notations of his age and years of service, obviously indicate Weaver's *awareness* that Brewer might file an age discrimination lawsuit if terminated. However, an employer's mere awareness of the legal ramifications of discrimination and efforts to

avoid such conduct are not in themselves probative of discriminatory intent. *Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 271 (7th Cir.1993) ("No inference of guilt can be drawn from awareness of one's legal obligations; to do so would be to promote the ostrich over the farther-seeing species"). Equally significant is the fact that Weaver expresses "concern" in the memorandum about the prospect of terminating a long time employee, and that she contemplates the possibility of Brewer making "progress." Moreover, the deposition testimony of Weaver, which is unrebutted, indicates that Weaver followed standard procedure in requiring documentation of Brewer's performance while he was on probation, and that she specifically high-lighted Plaintiff's age in order to alert Pfauser to Brewer's protected status and to ensure that age was not the reason for his termination. (*See* Deposition of Wanda Weaver at 60–62, 76–79.) Simply put, the Court finds nothing in Weaver's memorandum which would permit a reasonable jury to conclude that Brewer was terminated *because of*, rather than *in spite of*, his age.[9]

---

**8.** Plaintiff also argues that he is entitled to an inference that the information contained in his pre–1989 performance evaluations was favorable to his case, as he requested Quaker State to produce such documents but was informed by Defendants that his official personnel file had been lost. In support of this argument Plaintiff relies on *Partington v. Broyhill Furniture Indus.*, 999 F.2d 269, 271–72 (7th Cir.1993). This Court declines to permit such an inference because, unlike in *Partington*, there is no evidence here that Defendants ordered a "purge" of, or otherwise intentionally destroyed, Plaintiff's file. Defendants maintain that they have continued to search for the file, and that the file was last checked out to one of Quaker State's in-house attorneys who was terminally ill. Moreover, Defendants have produced Plaintiff's Detroit personnel file and, in addition, Plaintiff has had the opportunity to depose both Drummond and O'Donnell with regard to his performance during the years 1970–1989. Under these circumstances, the Court will not permit the requested inference in favor of Plaintiff, especially since the existing evidence of Plaintiff's poor performance suggests that the missing information would be at least as helpful to Defendants as to Plaintiff. *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 77 (3d Cir.1994) (in invoking discovery sanction, court should consider degree of fault of party who allegedly altered or destroyed the evidence, degree of prejudice suffered by opposing

party, and whether a lesser sanctions will avoid unfairness to opposing party).

**9.** In his Supplemental Brief in Opposition to Defendants' Motion for Summary Judgment, Brewer cites *Armbruster v. Unisys Corp.*, 32 F.3d 768 (3d Cir.1994), in support of his argument that the age notations in Weaver's memorandum, along with Brewer's other evidence of pretext, are sufficient to withstand summary judgment. *Armbruster* involved a group of age discrimination plaintiffs who alleged that they had been hand-picked (based on their age) for transfer into a company project group that was subsequently eliminated through a subsequent reduction-in-force ("RIF"). The *Armbruster* plaintiffs argued that the project group was in essence a sham and they introduced as part of their evidence several RIF-related documents containing (among other things) age notations, birth dates, or dates of hire. One such document discussed the need to terminate 13 employees and listed age and date-of-hire information as to 5 of the 13 individuals. Another document listed the names of 19 individuals along with notations as to their dates of birth, ages, sex, EEOC classifications and performance evaluations. The Third Circuit overturned the trial court's grant of summary judgment in favor of the employer and against the plaintiffs.

This Court, however, does not interpret *Armbruster* to hold that in every circumstance age

Finally, Brewer argues that an issue of fact exists as to whether or not Quaker State's reason for his termination is worthy of credence. In support of this proposition Brewer relies on: (1) his own testimony disputing the significance of certain problems raised by Pfauser; (2) his overall performance rating at or near the "competent" level; and (3) the fact that he received a bonus for exceeding his sales quota in 1990 and 1991. Brewer maintains that this evidence is sufficient to discredit Quaker State's proffered explanation for his discharge.

In evaluating Plaintiff's evidence, the Court is mindful of the standards set forth in *Fuentes:*

> To discredit the employer's proffered reason, ... the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate *such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons ... that a reasonable factfinder could rationally find them "unworthy of credence"* and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons".

32 F.3d at 765 (emphasis supplied) (citations omitted). Viewing the record in its entirety and in light of the foregoing directive, the Court concludes that Brewer has failed to produce evidence sufficient to render Quaker State's non-discriminatory explanation unworthy of credence.

With respect to Brewer's contention that Pfauser exaggerated Brewer's performance problems, the Court notes that Brewer's "rebuttal" testimony goes more to the egregiousness of the perceived problems than to their existence. In his brief, Plaintiff urges that he "strenuously disputed the *significance* of the purported 'problems' " raised by Pfauser, and that Pfauser continually documented incidents "of a *minor* nature." (Plaintiff's Br. in Opp. at 17 (emphasis supplied).) Plaintiff points to several excerpts from his deposition indicating, e.g., that he and Pfauser would argue over what Plaintiff considered "nitpicking things" (Brewer Depo. at 132–33), that Pfauser would make a "mountain out of a molehill" (*id.* at 109, 136–137), and that "Pfauser was continually bringing things up as problems that [Brewer] didn't think were problems" (*id.* at 109). Plaintiff does not, for the most part, dispute that these underlying problems occurred, and when provided an opportunity to comment on Pfauser's written performance critiques, he repeatedly declined to do so.

■ Brewer's subjective disagreement as to the significance of certain perceived problems is simply insufficient, without more, to cast doubt on the legitimacy of Quaker State's proffered explanation for his discharge, because the issue here is not Quaker State's business acumen, but rather its discriminatory intent *vel non. See Fuentes,* 32 F.3d at 765; *Gray v. York Newspapers,* 957 F.2d 1070, 1083 (3d Cir.1992) (ADEA is not intended to handcuff the managers and owners of businesses to the *status quo*); *Billet v. CIGNA Corp.,* 940 F.2d 812, 828 (3d Cir. 1991) (an employer's articulated reasons are not incredible simply because the employee asserts that such is the case; without some evidence to cast doubt on the employer's reason for an employment decision, the court will not interfere with an otherwise valid management decision); *Blanding v. Pennsylvania State Police,* 811 F.Supp. 1084, 1094 (E.D.Pa.1992) ("even though an employee may disagree with the employer's decisions, it is not for the court to second guess those decisions without evidence from which it could be inferred that [age] was a determinative factor in the result"), *aff'd* 12 F.3d 1303 (3d Cir.1993).

notations on a company document will be sufficient to overcome summary judgment. In fact, the Third Circuit in *Armbruster* relied on a variety of circumstantial evidence in overturning summary judgment, including age-related statements by decisionmakers intimately involved in the plaintiffs' transfers and the fact that the project group was formed and operated without any apparent business plan or purpose. 32 F.3d at 783–84. Thus, the Court does not believe that *Armbruster* requires a finding of a genuine issue of material fact in this action.

Further, there is uncontradicted evidence in the record that Pfauser, however "nitpicking" he might have been, acted similarly toward both younger and older employees. Brewer does not dispute the fact that a younger sales representative, age thirty-two, was placed on probation and subsequently terminated for perceived problems similar to those Brewer experienced. (Ex. 36 to Deposition of Paul Pfauser.) In fact, Plaintiff testified at deposition that, "[Pfauser] is a cross the T's and dot the I's type of person to the point of being almost a fanatic about it. Corporate policy was always first in line ... *And it affected everybody out there."* (Brewer Depo. at 56 (emphasis supplied).) The Court also notes Defendants' unrebutted evidence that, even prior to the written statement by Jack Corn which supposedly created the discriminatory policy at Quaker State, Plaintiff exhibited certain performance deficiencies under the management of both Drummond and O'Donnell, which were similar to those later documented by Pfauser.

██ Similarly, Brewer's overall average rating of "3" out of a possible 5 (discounting only his last full year of employment) and the fact that he was the only sales representative to surpass his quota in 1990 and 1991 are not sufficient to defeat summary judgment when the record is viewed as a whole. There is evidence that Plaintiff had a history of inconsistent work performance, including repeated problems in such areas as organization, customer relations, and communication. In the year prior to his discharge, Brewer received only a marginal overall rating. The record indicates that Pfauser explained to Plaintiff the seriousness of these problems and the fact that, notwithstanding Plaintiff's underlying gallonage sales, the problems needed to be addressed in order for Brewer to remain employed by Quaker State. During Brewer's final probationary period, Pfauser documented the following conversation:

> [Brewer] [t]hinks he is doing a much better job & (sic) is indicated by the bonus he achieved in 91 & 90. For the same reason, he does not see why he did not get merit [raise].
>
> I told him that he needs to make a much better improvement in his planning, follow-

up, & customer communication skills. He thought that these types of problems, he could work on but were not as important as quota gallons. I told him that if he was having a short, temporary slump in this area, that would be one thing, but the fact that Judd has a 15 year history of marginal reviews all outlining poor planning, communications, & poor customer service makes it quite serious & one that needs immediate [and] permanent correction.

(Pfauser Depo. Ex. 4.) Defendants' argument that Plaintiff cannot "pick and choose" which employment standards he will meet is well taken. *See Clowes v. Allegheny Valley Hosp.,* 991 F.2d 1159, 1162 (3d Cir.1993) (ADEA should not be used as a means of thwarting an employer's nondiscriminatory efforts to insist on high standards), *amended,* 62 Fair Emp.Prac.Cas. (BNA) 384 (3d Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 441, 126 L.Ed.2d 374 (1993). In sum, although Plaintiff's average numerical rating and sales bonus may be somewhat contradictory with the fact of his termination, the Court does not believe that they give rise to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Quaker State's explanation "that a reasonable factfinder could rationally find the explanation 'unworthy of credence.'" *Fuentes, supra,* at 765.

**B. Plaintiff's Michigan Law Claim**

██ For his second cause of action, Plaintiff alleges that his termination was in violation of Michigan's anti-discrimination statute, the Elliott–Larsen Civil Rights Act, Mich.Comp.Laws §§ 37.2101 *et seq.,* which prohibits—among other things—discriminatory employment practices based on age. *Id.,* § 37.2202(1)(a). According to the Michigan Supreme Court, a plaintiff may establish a prima facia case of age discrimination under the Elliott–Larsen Civil Rights Act by demonstrating that age was a determinative factor in the employer's adverse employment action. *Matras v. Amoco Oil Co.,* 424 Mich. 675, 682, 385 N.W.2d 586, 589 (1986). Further, a plaintiff may proceed on either a theory of intentional discrimination or a "disparate treatment" theory. *See Pitts v. Michael Miller Car Rental,* 942 F.2d 1067, 1070

(6th Cir.1991); *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 and n. 2 (6th Cir.1990); *Schultes v. Naylor*, 195 Mich.App. 640, 645–46, 491 N.W.2d 240, 242–43 (1992).

While not precisely set forth in the pleadings, it appears that Brewer is proceeding under an "intentional discrimination" theory. Accordingly, he may establish a prima facie case by demonstrating that: (1) he is a member of the affected class; (2) that some adverse employment action was taken against him; (3) that the person responsible for this adverse action was predisposed to discriminate against persons in the affected class; and (4) that the person responsible actually acted on this predisposition with respect to plaintiff. *Pitts, supra,* at 1070 n. 1; *McDonald, supra,* at 1160–61; *Schultes v. Naylor, supra,* 195 Mich.App. at 646, 491 N.W.2d at 342.

Although Plaintiff is clearly able to satisfy the first two criteria, the Court finds no evidence in this record to support the conclusion that Pfauser, or any other relevant decisionmaker at Quaker State, was predisposed to discriminate against Brewer on the basis of age. Further, there is no evidence to suggest that such decisionmakers acted in accordance with any such predisposition. In fact, the only evidence with respect to Pfauser's treatment of younger employees indicates that he treated persons of all age groups similarly, including terminating a younger employee who evidenced performance problems similar to Brewer's. Because Plaintiff has failed to establish a prima facie showing of intentional age discrimination under the Michigan Act, Plaintiff's second count cannot survive summary judgment.[10]

### IV. *CONCLUSION*

In sum, the Court finds that the record, when examined as a whole, lacks evidence

sufficient to create a genuine issue as to whether Quaker State's proffered reason for Brewer's termination was a mere pretext for age discrimination. In addition, Plaintiff has failed to demonstrate a prima facie case of age discrimination under Michigan's Elliott–Larsen Civil Rights Act. Judgment will therefore be entered in favor of Quaker State on both of Plaintiff's claims. An appropriate order follows.

### *ORDER*

AND, NOW, this 1st day of February, 1995, for the reasons set forth in the accompanying Memorandum Opinion, IT IS ORDERED that the Defendants' Motion for Summary Judgment [Doc. No. 9] is GRANTED. JUDGMENT is hereby entered in favor of the Defendants, Quaker State Oil Refining Corporation and Quaker State Corporation, and against the Plaintiff, Judson C. Brewer.

---

**10.** The Court's conclusion would not differ even if Plaintiff's claim is characterized as one of alleged "disparate treatment." The standards and burdens for proceeding on a "disparate treatment" claim under the Michigan Act are the same as those used in ADEA cases. *Pitts v. Michael Miller Car Rental,* 942 F.2d at 1070; *Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 940 (6th Cir.1987); *Cherry v. Thermo Electron Corp.,* 800 F.Supp. 508, 511 (E.D.Mich.1992) (citing *Jenkins v. American Red Cross,* 141 Mich. App. 785, 793, 369 N.W.2d 223, 227 (1985)). Accordingly, even if Plaintiff purports to assert a disparate treatment theory, summary judgment for Defendants is warranted for the reasons discussed above in the Court's treatment of Plaintiff's ADEA claim.