LeGALLEY v BRONSON COMMUNITY SCHOOLS

Docket No. 66539. Submitted April 20, 1983, at Lansing.—Decided
      July 20, 1983.

      Robert M. LeGalley, an elementary school principal in the Bron-
          son Community Schools, was denied salary ·increases for two
          successive years while the other five administrators in the
          system were given substantial raises. A member of the school
          board and the school superintendent informed LeGalley that
          the school board wanted his resignation as principal and that
          he would be given no further increases in salary. LeGalley was
          told that although the school board wanted his resignation as
          principal, he would be considered for a teaching position.
          LeGalley refused to resign and filed a petition with the State
          Tenure Commission alleging that the denials of increases in
          salary constituted a demotion or constructive discharge in
          violation of his rights under the teachers' tenure act. The
          tenure commission found that LeGalley had been construc-
          tively discharged or demoted without the procedural protection
          of the teachers' tenure act and awarded LeGalley back pay in
          the amount equal to the average increases in salary received by
          the other administrators in the system. The Bronson Commu-
          nity Schools appealed to the Branch Circuit Court, which
          reversed the finding of the tenure commission, finding that the
          commission's decision was not supported by competent, mate-
          rial and substantial evidence, Harvey W. Moes, J. LeGalley
          appealed. *Held:*

          1. The tenure commission committed an error of law by
          finding a constructive demotion. Because no demotion occurred
          according to the express definition used in the teachers' tenure
          act, the circuit court correctly held that the tenure commission
          exceeded its authority by finding a constructive demotion.

          2. The trial court was also correct in rejecting LeGalley's

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 1, 223 *et seq.*
[2] 73 Am Jur 2d, Statutes § 142 *et seq.*
[3-5] 48 Am Jur 2d, Labor and Labor Relations § 922.
[5] 48 Am Jur 2d, Labor and Labor Relations §§ 908, 909.

claim that a constructive discharge had occurred. The tenure commission's finding of a constructive discharge was not supported by competent, material and substantial evidence.

Affirmed.

1. STATUTES — DEFINITIONS.

A statutory definition supersedes a commonly accepted dictionary or judicial definition; where a statute contains a definition of a term, that definition is binding on the courts.

2. STATUTES — JUDICIAL CONSTRUCTION.

Unambiguous statutory language may not be disregarded by the interpreter thereof in deference to what he determines to be and invokes as the spirit of the statute.

3. MASTER AND SERVANT — CONSTRUCTIVE DISCHARGE — WORKING CONDITIONS — INVOLUNTARY RESIGNATION.

The term "constructive discharge" has been used to describe a facially voluntary termination of employment which should legally be considered an involuntary one; a constructive discharge occurs where an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.

4. MASTER AND SERVANT — CONSTRUCTIVE DISCHARGE — WORKING CONDITIONS — REASONABLE PERSON STANDARD.

The trier of fact must be satisfied that working conditions would have been so difficult or unpleasant that a reasonable person in an employee's shoes would have felt compelled to resign in order to find a constructive discharge.

5. MASTER AND SERVANT — CONSTRUCTIVE DISCHARGE — UNEQUAL PAY.

Unequal pay is a factor which may support a finding of a constructive discharge, but a difference in pay alone cannot support a finding that a reasonable employee would have been forced to resign.

*Gregory, Van Lopik, Moore & Jeakle* (by *Gordon A. Gregory*), for plaintiff.

*Thrun, Maatsch & Nordberg, P.C.* (by *Michael A. Eschelbach*), for defendant.

Before: V. J. Brennan, P.J., and M. J. Kelly and N. J. Kaufman,* JJ.

N. J. Kaufman, J. Plaintiff appeals as of right from a circuit court judgment reversing an order of the State Tenure Commission. The commission had found that the defendant school board "constructively discharged or demoted" plaintiff without according him the procedural protection afforded by the teachers' tenure act, MCL 38.71 et seq.; MSA 15.1971 et seq.

Plaintiff, an elementary school principal, was denied salary increases for two successive years. Plaintiff alleged that the denial of the salary increases was part of a concerted effort to force him to resign or to accept a demotion. Plaintiff presented substantial evidence that the school board was dissatisfied with his performance and would not give him a salary increase in his position as principal.

The school board showed that it had been dissatisfied with plaintiff's performance. The board president testified that the board had considered discharging plaintiff, but that the members felt that the proof that just cause existed for the discharge was inadequate. Another board member and the school superintendent were directed to meet with plaintiff in March of 1979. The superintendent told plaintiff that the board wanted his resignation as principal but would consider him for a teaching job. The board member testified that the superintendent also told plaintiff that he would be given no further increases in salary if he refused to step down. Plaintiff was denied a salary increase for both the 1978-1979 and 1979-1980 school years.

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The other five administrators in the district were given raises of from 8.6 to 9.5 percent in 1978-1979 and 8.9 to 9.1 percent in 1979-1980. The district's administrators were not covered by any collective-bargaining agreement and made individual contracts with the board.

The tenure commission found in plaintiff's favor. It found that, by its actions, the board had "constructively discharged or demoted" plaintiff. It is conceded that plaintiff had administrative tenure at the time. The commission awarded plaintiff back pay which was computed by assigning him a salary increase equal to the average percentage increases for all of the district's administrators for the two years in question. The school board sought review of the commission's decision in circuit court. The circuit court reversed, finding that the commission's decision was not supported by competent, material and substantial evidence.

On appeal, plaintiff argues that the commission's finding that he was constructively demoted or discharged was supported by competent, material and substantial evidence. We begin by considering the claim of "constructive demotion". MCL 38.74; MSA 15.1974 defines "demote" to mean "to reduce compensation or to transfer to a position carrying a lower salary". The school board clearly did not reduce the compensation received by plaintiff. The board also did not transfer plaintiff to a position carrying a lower salary or any other position.

The tenure commission committed an error of law by finding a "constructive demotion" in this case. A common rule of statutory construction is that a statutory definition supersedes a commonly accepted dictionary or judicial definition; where a statute contains a definition of a term, that defini-

tion is binding on the courts. *Erlandson v Genesee County Employees' Retirement Comm,* 337 Mich 195, 204; 59 NW2d 389 (1953). Express, unambiguous statutory language may not be disregarded by the interpreter in deference to what he invokes as the spirit of the teachers' tenure act. *Street v Ferndale Bd of Ed,* 361 Mich 82, 86-87; 104 NW2d 748 (1960). In *Street,* the Supreme Court indicated its belief that the coverage of the tenure act was not determined by the administrative or judicial perception of the spirit of the act but by the language of the act itself. *Street, supra,* p 87. The Court stated that it was not ready to join a chorus whose theme was that allowing control over schools by local officials amounted to abandoning them to whim and caprice. *Street, supra,* p 87. Because no "demotion" occurred according to the express definition used in the act, the circuit court correctly held that the tenure commission exceeded its authority by finding a "constructive demotion".

The trial judge was also correct in rejecting plaintiff's claim that a "constructive discharge" had occurred. Although "discharge" is not specifically defined in the statute, it can only mean an involuntary termination of employment in the context of the act. The term "constructive discharge" has been used to describe a facially voluntary termination which should legally be considered an involuntary one. A constructive discharge occurs "when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation". *Pittman v Hattiesburg Municipal Separate School Dist,* 644 F2d 1071, 1077 (CA 5, 1981). See also *English v Powell,* 592 F2d 727 (CA 4, 1979); *Muller v US Steel Corp,* 509 F2d 923 (CA 10,

1975), *cert den* 423 US 825; 96 S Ct 39; 46 L Ed 2d 41 (1975), and *Pennsylvania Labor Relations Bd v Sand's Restaurant Corp,* 429 Pa 479, 483-484; 240 A2d 801, 803 (1968). A constructive discharge involves the employer's deliberate effort to make things difficult for an employee, thus forcing him or her to resign. *Coe v Yellow Freight System, Inc,* 646 F2d 444, 454 (CA 10, 1981). See also *Muller, supra.* Before a constructive discharge may be found, the trier of fact must be satisfied that working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Rosado v Santiago,* 562 F2d 114, 119 (CA 1, 1977).

Although unequal pay is a factor which may support a finding of a constructive discharge, a difference in pay alone cannot support a finding that a reasonable employee would have been forced to resign. *Pittman, supra,* 1077. See also *Bourque v Powell Electrical Mfg Co,* 617 F2d 61, 65 (CA 5, 1980), and *Calcote v Texas Educational Foundation, Inc,* 578 F2d 95 (CA 5, 1978).

We agree with the trial judge that the finding of a constructive discharge was not supported by competent, material and substantial evidence. See *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 121-124; 223 NW2d 283 (1974). First, no actual termination of employment occurred. Second, plaintiff failed to present evidence of onerous working conditions or of harassment. Plaintiff presented evidence of a disparity in salary and proof that he was told that the disparity would continue. He also proved that he was asked to resign. Plaintiff's proofs were clearly inadequate to show a constructive discharge as we understand that term.

We realize that the teachers' tenure act, as we

interpret it, provides unorganized teachers and school administrators with precious little protection from arbitrary compensation decisions by school boards. When the tenure act was first adopted, the Legislature may not have anticipated that the denial of a salary increase may have the impact of a salary decrease in a time of rampant inflation. We recognize that the tenure commission's use of the "subterfuge test" in this case represented an honest effort to strike a balance between a school board's autonomy and freedom to contract and the goals advanced by the teachers' tenure act in general. Our reading of the act, however, convinces us that the Legislature has not invested the commission with the authority to strike this particular balance and has not given the commission any general power to advance the goals of the act. The task of providing teachers and administrators with protection from arbitrary compensation decisions is one for the Legislature alone.

Affirmed. No costs, a public question being involved.