Linda L. PITTS, Plaintiff–Appellant,

v.

**MICHAEL MILLER CAR RENTAL,**
Defendant–Appellee.

No. 88–2233.

United States Court of Appeals,
Sixth Circuit.

Submitted May 2, 1991.

Decided Aug. 29, 1991.

Lawrence S. Katkowsky (briefed), Southfield, Mich., for plaintiff-appellant.

Gary B. Garson, Cleveland, Ohio, for defendant-appellee.

Before KEITH and MILBURN, Circuit Judges, and HILLMAN, Senior District Judge.[*]

KEITH, Circuit Judge.

Plaintiff Linda Pitts ("plaintiff"), an African–American woman, appeals the district court's November 25, 1988, order granting summary judgment in favor of defendant, her former employer, Michael Miller Car Rental, Inc. ("defendant"), in this diversity action brought pursuant to the Elliot Larsen Act ("the Act"), M.C.L.A. § 37.2101 et seq. For the following reasons, we REVERSE and REMAND.

### I.

#### A.

Defendant is an automobile rental company specializing in the rental of replacement vehicles to insurance policyholders. Six to eight months prior to plaintiff's employment with defendant, Cindy Moyer, a white woman, was hired as a reservationist at a starting salary of $250 per week. Defendant hired plaintiff on July 14, 1986, as a reservationist in defendant's St. Clair Shores, Michigan, office at the rate of $225 per week. Marie Dzielatka ("Dzielatka"), a white woman, was hired on September 26, 1986, as an assistant manager at the same office at the rate of $250 per week. Dzielatka had no previous experience doing management work in the car rental field.

In December 1986, after Dzielatka left defendant's employ, plaintiff was promoted to assistant manager. At that time, plaintiff requested a $50 per week raise. Plaintiff was informed by Michael Berg

---

[*] The Honorable Douglas W. Hillman, Senior United States District Judge for the Western District of Michigan, sitting by designation.

("Berg"), the Detroit office manager, that he would recommend that she be given a raise in the amount of $25 per week. However, Michael Miller ("Miller"), president, and Daniel Hecht ("Hecht"), comptroller, refused plaintiff's request and Berg's recommendation. Plaintiff was advised that she would not be given a raise because the Detroit-area offices were operating at a consistent and large loss.

On January 26, 1987, Louise Cianciolo ("Cianciolo"), a white woman, was hired for the St. Clair Shores office as a reservationist and management trainee at a starting salary of $250 per week. Plaintiff's salary remained at $225 per week.

In May, 1987, Steve Sugayan ("Sugayan"), plaintiff's supervisor, found amounts of $30 and $25 missing from two separate bank deposits. On July 17, 1987, plaintiff and Cianciolo were disciplined regarding the missing funds. Until this time, plaintiff had received favorable evaluations by defendant. Plaintiff left work on July 31, 1987, ostensibly for a one-week vacation. However, she did not return to work.

### B.

On July 8, 1987, plaintiff filed this diversity suit alleging that defendant had discriminated against her because of her race, in violation of the Act. Her complaint alleged that white employees with the same job or with fewer responsibilities and less seniority were paid more money than plaintiff. Plaintiff claimed $10,000 in losses suffered as a result of defendant's actions and demanded that her salary be placed at a rate of pay commensurate with her seniority and position retroactively from January 1987. In an amended complaint filed on September 30, 1987, plaintiff alleged that she had been constructively discharged by defendant because she had been unfairly disciplined regarding the two bank deposits, thus rendering her working conditions intolerable.

Defendant filed a motion for summary judgment on July 1, 1988. On November 25, 1988, the district court granted defendant's motion. Plaintiff filed a timely notice of appeal on November 29, 1988.

### II.

### A.

We review a grant of summary judgment de novo. We apply the same test as the district court. *See EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir. 1990); *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990).

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court stated that the substantive law will identify which facts are material and that only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Id.* at 248, 106 S.Ct. at 2510. Thus, factual disputes which are irrelevant or unnecessary will not be considered. To meet this standard, the moving party need not support its motion with affidavits or other similar materials "negating" the opponents claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden on the moving party may be discharged by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Id.* at 323, 106 S.Ct. at 2552. Once the moving party meets this burden, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his or her case with respect to which he or she bears the burden of proof. *Id.* Where the record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

### B.

On appeal, plaintiff argues that the district court erred in granting summary judgment in favor of defendant because there existed a genuine issue of material fact with respect to defendant's reason for paying plaintiff less than white employees.

■ We first examine the substantive law governing this case in order to determine what issues of fact are material. *See Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989). A plaintiff must make a prima facie showing of discrimination to sustain a claim of racial discrimination under the Act. She or he can establish a prima facie case of race discrimination by showing either disparate treatment or intentional discrimination.[1] *See Singal v. General Motors Corp.,* 179 Mich.App. 497, 502–03, 447 N.W.2d 152, 155–56 (1989); *Marsh v. Department of Civil Serv.,* 173 Mich.App. 72, 79, 433 N.W.2d 820, 823 (1988), *appeal denied,* 432 Mich. 874 (1989); *Wyatt v. Southland Corp.,* 162 Mich.App. 372, 374–75, 412 N.W.2d 293, 295 (1987).

Plaintiff relies on the theory of disparate treatment. Disparate treatment claims brought under the Act have been construed in the same manner as federal civil rights claims. *See Jenkins v. Southeastern Mich. Chapter, Am. Red Cross,* 141 Mich. App. 785, 793 n. 2, 369 N.W.2d 223, 227 n. 2 (1985). Plaintiff alleges two acts of discriminatory treatment: discriminatory work conditions of a lower salary than comparable white workers and constructive discharge resulting from the lower salary and her discipline upon discovery of a cash shortfall.

■ Plaintiff must first establish a prima facie case of discrimination. *Jenkins,* 141 Mich.App. at 793–95, 369 N.W.2d at 228 (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)). To make a prima facie showing of race discrimination under the disparate treatment theory, the party alleging discrimination must show that he or she was a member of the class entitled to protection under the Act and that, for the same or similar conduct, he or she was treated differently than one who was not a member of the protected class. *See Sargent v. International Bhd. of Teamsters,* 713 F.Supp. 999, 1014–15 (E.D.Mich.1989) (citing *Pompey v. General Motors Corp.,* 385 Mich. 537, 549, 189 N.W.2d 243, 250 (1971)). The burden then shifts to defendant to articulate some legitimate, nondiscriminatory reason for the challenged treatment of the employee. If the employer meets this burden of production, the employee must be given the opportunity to show that the reasons offered by the defendant are a pretext for the discrimination. *Id.*

■ We will first examine the disparate pay claim. In the instant case, plaintiff has established that, as an African–American, she is a member of a class entitled to protection under the Act. She also has established that she was paid less than individuals who are members of a different race.

Defendant has articulated at least two legitimate, nondiscriminatory reasons why plaintiff was treated differently from the other employees performing similar or identical duties. First, defendant states that its Detroit-area offices were operating at a loss thus preventing it from raising

---

1. Both disparate treatment and intentional discrimination require a showing of intent to discriminate. However, in order for a plaintiff to establish a prima facie case of intentional discrimination, as opposed to disparate treatment, he or she must show that he or she is a member of the class entitled to protection under the Act, that he or she was discharged and that the person discharging him or her was predisposed to discriminate against persons in the affected class and had actually acted on that disposition in discharging her. *Civil Rights Comm. v. Chrysler Corp.,* 80 Mich.App. 368, 373 n. 3, 263 N.W.2d 376 (1977) *cited in Marsh v. Department of Civil Service,* 173 Mich.App. 72, 79, 433 N.W.2d 820, 823 (1988), *appeal denied,* 432 Mich. 874 (1989).

plaintiff's pay. Second, defendant explains the disparity in wage levels based on plaintiff's lack of a college degree. The other, higher-paid employees, had college degrees.

Assuming that these are legitimate reasons, plaintiff is then required to demonstrate that these reasons are pretextual. Plaintiff may demonstrate pretext either by showing that it is more likely that a discriminatory reason motivated the employer or by showing that the proffered reason is not worthy of credence. *See Jenkins*, 141 Mich.App. at 794, 369 N.W.2d at 228.

Plaintiff asserts that defendant's reasons are pretextual because, after denying her request for a raise, and despite defendant's alleged financial difficulties, defendant hired Cianciolo, a white woman, as a reservationist at a rate of $250 per week, $25 more per week than plaintiff's salary as assistant manager. This fact appears to us to be inconsistent with defendant's alleged financial losses in its Detroit area offices which precluded it from granting plaintiff her requested pay increase. Thus, there existed a genuine issue of material fact with respect to whether defendant's purported legitimate reason for the disparity in pay, financial losses, was pretextual. A rational trier of fact could have found that defendant's reason was pretextual because, after defendant had refused plaintiff a $25 per week raise on the basis that it was losing money, defendant hired a white woman for a lower level position at $250 per week, a higher rate of pay than plaintiff, an African–American woman. Thus, a rational trier of fact could have found that a discriminatory reason more than likely motivated defendant or that the proffered reason was not worthy of credence. *See id.*

Plaintiff further challenges defendant's articulated reason that plaintiff was paid less because of her lack of college education. Our examination of the record reveals that a college education is not a job requirement nor is it relevant to performing any of the tasks performed by plaintiff. Thus, a rational trier of fact could have found that plaintiff's lack of a college edu-

cation was not the real reason for the wage disparity between plaintiff and the white, college-educated employees. For instance, deposition testimony by Miller established that he himself has only a high school education. Miller also confirmed that, in his opinion, one did not need to have a college education to be able to perform the duties of a reservationist, dispatcher or office manager. Joint Appendix at 329. Testimony by Sugayan established that plaintiff and Cianciolo were performing the same work. *Id.* at 340. When asked what kind of college experience would be applicable to the job tasks performed by plaintiff, Berg replied that he believed a college degree gives one experience "[i]n tackling a job task and tackling discipline needed for your job and organizing your day...." Joint Appendix at 222. He also stated that plaintiff and Cianciolo were performing the same tasks and that the only reason plaintiff held a higher title was because she had been there longer, not because of the substance of the job duties and requirements. *Id.* Whether plaintiff's lack of a college education was a pretext for discrimination is a genuine issue of material fact because there is no requirement of a college education to hold any of the positions held by plaintiff or the other white employees. Therefore, a rational trier of fact could have found that a discriminatory reason, such as race, more likely motivated defendant or that the proffered reason was not worthy of credence. *See Jenkins*, 141 Mich.App. at 794, 369 N.W.2d at 228.

We therefore determine that there existed genuine issues of material fact as to whether both of defendant's proffered reasons for paying plaintiff less, defendant's Detroit area offices' financial losses and plaintiff's lack of a college education, were pretextual. The fact that Cianciolo was hired for $250 per week after defendant denied plaintiff's pay raise request on the basis of financial losses demonstrates that a rational trier of fact could have found in plaintiff's favor. The conflicting testimony of defendant's employees, regarding the whether a college education is required or enhances one's ability to perform the positions held by plaintiff and therefore justi-

fies a difference in pay between college-educated and noncollege-educated employees, also demonstrates that a rational trier of fact could have found in plaintiff's favor. The testimony by Miller, Sugayan and Berg demonstrate that the fact of whether one needs a college education to satisfactorily or better perform the positions held by plaintiff was not undisputed. Based on such testimony, a rational trier of fact could have reasonably found that defendant's reasons for paying plaintiff less were a pretext for discrimination. Thus, the district court's grant of summary judgment in favor of defendant was erroneous.

### C.

Plaintiff also contends that she was constructively discharged. However, we do not find plaintiff's argument persuasive on this claim.

Constructive discharge may be found where working conditions would have been so difficult or unpleasant that a reasonable person would have felt compelled to resign. *Jenkins,* 141 Mich.App. at 796, 369 N.W.2d at 229. A finding of constructive discharge depends on the facts of each case. *Id.* Constructive discharge requires an examination of the intent of the employer. An employer will be held to intend the reasonably foreseeable consequences of his or her conduct. *Id.* Where discrimination is charged, the plaintiff "can make a jury-submissible case ... by showing discrimination plus aggravating circumstances," such as continuous and pervasive discriminatory treatment spanning a substantial period of time. *Id.*

In this case, while plaintiff has shown a prima facie case of discrimination based on the wage discrepancy, we do not find that the record supports her claim of constructive discharge because plaintiff has not shown additional aggravating circumstances. In her deposition, plaintiff identified the following factors to support her constructive discharge claim: defendant's failure to grant her requested raise and unfair discipline regarding the incident of the missing deposit funds.

With regard to defendant's failure to grant plaintiff a wage increase, a difference in pay alone cannot support a finding of a constructive discharge, i.e., that a reasonable employee would have been forced to resign. *See LeGalley v. Bronson Community Schools,* 127 Mich.App. 482, 487, 339 N.W.2d 223, 225–26 (1983). While in the instant case the wage disparity tends to indicate the existence of discrimination, the record does not demonstrate additional aggravating factors beyond the wage disparity which indicate that plaintiff's working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign. *See id.*

We find that the unfair discipline matter does not constitute an aggravating circumstance in addition to the discrimination based on disparate pay. The instance of discipline does not appear to be motivated by impermissible considerations. The record reveals that both plaintiff and Cianciolo were disciplined because both had been responsible for the deposits. Thus plaintiff was not disciplined in a discriminatory manner because both plaintiff and a white employee were treated equally for the same conduct. There is no evidence in the record to indicate that the deposit incident was fabricated by defendant or that plaintiff was singled out by defendant for discipline regarding this matter.

Plaintiff left work and, despite written requests from defendant to document her absence, never attempted to explain the reason for her absence. The fact of disparate pay is insufficient to establish that a reasonable employee would have been forced to resign without additional aggravating circumstances. *See id.* Thus, while there is evidence tending toward a finding of racial discrimination based on disparate pay, the facts do not reveal discrimination plus aggravating circumstances which would support a claim of constructive discharge. *See Jenkins,* 141 Mich.App. at 796, 369 N.W.2d at 229.

### III.

For the above-stated reasons, we REVERSE the district court's November 25,

1988, order granting summary judgment in favor of defendant and REMAND this case for a full hearing on the disputed issues of material fact as to whether defendant's proffered reason for the disparate treatment accorded plaintiff were in fact pretexts for racial discrimination.