**Steve GOOCH d/b/a Gooch Farms, Plaintiff,**

v.

**E.I. DUPONT DE NEMOURS & COMPANY, Defendant.**

**No. Civ.A. 4:97–CV–144–M.**

United States District Court,
W.D. Kentucky,
Owensboro Division.

Aug. 5, 1998.

Kenneth W. Humphries, Hopkinsville, KY, for Steve Gooch, plaintiff.

J. Michael Brown, Wyatt, Tarrant & Combs, Louisville, KY, John P. Mandler, Mark J. Carpenter, Faegre & Benson, Minneapolis, MN, for E.I. DuPont De Nemours Company, defendant.

## MEMORANDUM OPINION AND ORDER

McKINLEY, District Judge.

This matter is before the Court on Motion by Defendant, E.I. DuPont de Nemours & Company [hereinafter "DuPont"], for Partial Summary Judgment. [DN15] This is a products liability action based on injuries allegedly resulting from use of a product manufactured by DuPont. Plaintiff, Steve Gooch d/b/a/ Gooch Farms [hereinafter "Gooch Farms"], bases its cause of action on theories of strict liability, negligence, breach of express and implied warranties, violation of the Kentucky Consumer Protection Act, KRS § 367.110 *et seq.* [hereinafter "KCPA"], and fraud. Plaintiff also seeks punitive damages. The Court's jurisdiction over this matter is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Fully briefed, this matter is now ripe for decision. For the reasons set forth below, Defendant's Motion for Partial Summary Judgment is **granted.**

## I. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

tled to a judgment as a matter of law." The inquiry under Fed.R.Civ.P. 56(c) is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party seeking summary judgment bears the initial responsibility for informing the court of the basis for its motion which the party demonstrates the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. A proper summary judgment may be opposed by any evidentiary material listed in Fed.R.Civ.P. 56(c), except for the mere pleadings. *Id.* at 324, 106 S.Ct. 2548. Evidence of a nonmovant is to be believed, "and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the nonmoving party's case, such as proof by clear and convincing evidence, must be satisfied by the nonmoving party. *Street,* 886 F.2d at 1479–80. "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, the motion for summary judgment should be granted." *Pitts v. Michael Miller Car Rental,* 942 F.2d 1067, 1069–70 (6th Cir.1991) (citing *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## II. FACTS

Plaintiff, Gooch Farms, is primarily engaged in the business of farming. In June of 1996, Gooch Farms purchased the herbicide Accent SP®, which is manufactured by DuPont, from Parrish Shop and Sales. Gooch Farms purchased the Accent SP® relying on representations made by DuPont sales representative, Earl Strawder [hereinafter "Strawder"]. Subsequent to applying the Accent SP®, Gooch Farms noticed that the corn plants showed signs of injury.

On July 3, 1996, Steve Gooch notified Monty Parrish [hereinafter "Parrish"] of Parrish Shop & Sales. Parrish then notified Strawder. Upon visiting the affected fields, Strawder opined that the damage to the corn plants was consistent with glyphosate poisoning. Glyphosate is the active ingredient in an herbicide called Roundup, manufactured by Monsanto Corporation. It is undisputed that glyphosate is not contained in Accent SP® or any of DuPont's other crop protection products.

Gooch Farms also notified Henderson County Extension Agent Michael Smith [hereinafter "Smith"], who took samples of the corn for examination and diagnosis at the University of Kentucky College of Agricultural Research and Education Center located in Princeton, Kentucky. Dr. James Martin, a weed scientist, examined the sample and determined that the injury was consistent with sulfonylurea herbicides, such as Accent SP®. In Dr. Martin's opinion, the injury did not result from application of Roundup.

On July 8, 1996, Strawder collected a sample of the corn plants, which he then sent to APT Labs, Inc. [hereinafter "APT"]. APT analyzed the plant samples for the presence of glyphosate. The results of the analysis indicated the presence of glyphosate in a concentration of 1.74 parts per million ("ppm"). Strawder notified Parrish of the results.

Within three days of the meeting, Steve Gooch asked Parrish to take a sample of

the corn and submit it to a different laboratory for analysis. On July 22, Parrish took a sample from Gooch Farms' corn and sent it to A & L Laboratories [hereinafter "A & L"]. A & L is not certified to conduct glyphosate testing, so the samples was sent to Minnesota Valley Testing Laboratories [hereinafter "MVTL"]. MVTL tested the sample and reported no glyphosate up to a detection rate of 0.2 ppm.

On October 3, a meeting was held at Parrish Shop & Sales to discuss the problem with Gooch Farms' corn crop. Strawder and two other DuPont representatives were present on behalf of DuPont. Also in attendance were Steve and Danny Gooch, and three inspectors from the Kentucky Department of Agriculture, Division of Pesticides. Strawder presented the APT test results indicating the presence of glyphosate in the sample taken by Strawder. Gooch Farms presented the results of the tests conducted by MVTL indicating that no glyphosate was found in the sample taken by Parrish. At the request of the inspectors, Strawder signed a short, handwritten statement drafted by one the inspectors, regarding the circumstances surrounding collection of the sample:

> On July 5, 1996 I examined a corn field farmed by Steve Gooch in Henderson, Ky. The examination of the field, refered [sic] to as J4, was at the request of Monty Parrish of Parrish Shop & Sales and the farmer Mr. Gooch. After seeing evidence of damage I returned on July 8, 1996 to collect a foliage [sic] sample. The foliage sample was collected on July 8, 1996 at approximated 10:00 am from various locations in the field showing signs of damage and placed in 1 gallon freezor [sic] bags. The sample was mailed to APT Labs Inc .... on the afternoon of July 8, 1996.... The sample was mailed in an unrefrigderated [sic] condition.

In June of 1997, Gooch Farms commenced the present action against DuPont. In addition to asserting claims based on strict liability, negligence, and breaches of express and implied warranties, Gooch Farms also alleges fraud, violation of the Kentucky Consumer Protection Act, KRS § 367.110 *et seq.*, and seeks punitive damages. The latter three claims are based on allegations that DuPont knowingly misled Gooch Farms and the Kentucky Department of Agriculture by stating that the cause of the damage to Gooch Farms' crop was the presence of the substance glyphosate. Gooch Farms insists that DuPont submitted a written report to the Kentucky Department of Agriculture for the purpose of obstructing and misleading the Department's investigation of Gooch Farms' damage and claim and for the purpose of obstructing and preventing Gooch Farms' recovery of damages from DuPont.

On July 31, 1997, MVTL issued an Amended Report indicating that glyphosate *was* present in the Parrish sample at a concentration of 0.16 ppm based on reporting limit of 0.05 ppm (the reporting limit on the original report was 0.2 ppm). Pat Fleming of MVTL explained that the 0.16 ppm reading was obtained during the original 1996 test, but that a computer programming error erroneously set the reporting limit at 0.2 ppm rather than the actual reporting limit of 0.05 ppm. The programming error went undetected until July of 1997 when it was brought to MVTL's attention by A & L. MVTL then retraced its steps, amending each of the affected glyphosate testing reports and generating Amended Reports, which it then sent to A & L. The problem affected 13 of MVTL's glyphosate reports for A & L.

### III. FRAUD

 Under Kentucky law, a plaintiff alleging common law fraud must prove 1) a material representation; 2) which is false; 3) known to be false or made recklessly; 4) made with the intent that it be acted upon; 5) actual reliance; and 6) injury. *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky.App.1978). Plaintiff must prove each of these six elements by clear and convincing evidence. *Id.* Plaintiff must satisfy this enhanced burden even at

the summary judgment stage. *Aud v. Illinois Central R.R. Co.*, 955 F.Supp. 757, 758 (W.D.Ky.1997) (citing *J.C. Bradford*, 886 F.2d at 1479).

Gooch Farms maintains that DuPont's sample of corn was tampered with to show the presence of Roundup. Gooch Farms asserts that DuPont's representation to the Division of Pesticides that the cause of the damages was the presence of glyphosate was false, and that DuPont knew this at the time it made the representation. Gooch Farms asserts that DuPont's submission of a written report to the Division of Pesticides in the form of the signed statement by Strawder and the test results showing the presence of glyphosate was done for the purpose of obstructing the Division of Pesticides' investigation of Gooch Farms' damage and to obstruct and prevent his recovery for the damage.

Gooch insists that the Affidavit of Allen Kyle [hereinafter "Kyle"] is sufficient to raise questions as to the honesty of Strawder and the integrity of his sample and to preclude a grant of summary judgment on this issue. Gooch Farms notes that, upon investigating the case and after reviewing all statements and test results, Kyle could not determine the cause of the injury to corn. However, Kyle was concerned about the integrity of the samples and the great disparity in the results. Gooch Farms maintains that Kyle's questioning of the integrity of the samples, after exonerating Steve Gooch from any violations or mistakes in the application of the DuPont product, casts serious doubt as to the integrity of the DuPont sample.

■ The Court, however, need not reach this issue. A review of the record, coupled with Gooch Farms own admissions, cannot establish a prima facie case of fraud under Kentucky law because Gooch Farms cannot show that it relied on the representations made by DuPont representative, Earl Strawder. "The very es-

sence of actionable fraud or deceit is the belief in and reliance upon the statements of the party who seeks to perpetrate the fraud." *Wilson v. Henry*, 340 S.W.2d 449, 451 (Ky.1960); *see also Snyder v. Rhinehart*, 274 Ky. 274, 118 S.W.2d 543, 547 (Ky.1938) ("Where the party claiming to be defrauded did not believe what was told him by the other party or did not act upon it, he can not recover."). In *Snyder*, Rhinehart alleged that Snyder had misled him concerning the southwest boundary of a tract of land that Snyder was attempting to sell Rhinehart. *Id.* at 546. Subsequently, but before Rhinehart and Snyder entered into the contract that was the subject of Rhinehart's counterclaim, Rhinehart viewed the deed to the property and discovered that Snyder's representation was incorrect. *Id.* The court held that Rhinehart could not maintain an action for fraud because he had not relied upon Snyder's alleged misrepresentation. *Id.* at 547 ("Rhinehart says he did not believe what Ben Snyder told him, hence it makes no difference what Snyder told him, he did not deceive him.").

In the present case, Steve Gooch testified that he did not believe APT Lab's test results. In its response to Defendant's Motion for Summary Judgment, Gooch Farms reaffirms that it "did not actually rely upon the DuPont sample."[1] *Response of Plaintiff to Defendant's Motion for Summary Judgment*, filed May 12, 1998, at 9. Since Gooch Farms cannot establish an essential element of its fraud claim, summary judgment on this issue is appropriate.

## IV. VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT

Summary judgment is also appropriate regarding Gooch Farms' claim under the Kentucky Consumer Protection Act. The KCPA declares that "[u]nfair, false, mis-

---

1. Gooch Farms maintains its assertions of fraudulent activity are based on the way the term "fraud" is defined in 37 AmJur.2d, Fraud and Deceit. Kentucky case law, not

definitions set forth in *American Jurisprudence* establish the essential elements of actionable fraud in Kentucky.

leading, or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. KRS § 367.170. In addition to providing for enforcement by the Attorney General, the KCPA authorizes a private right of action brought by "[a]ny person who purchases or leases goods or services *primarily for personal, family or household purposes* and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170." KRS § 367.220 [Emphasis added].

■ In the present case, DuPont maintains, and the Court agrees, that Gooch Farms' does not have standing to assert a claim against DuPont under the KCPA. As previously stated, Gooch Farms is primarily in the business of farming. Gooch Farms purchased the Accent SP® for use on its crops in order to sell more corn at a better price—in other words, to maximize its profits. Since Gooch Farms purchased the product for commercial, rather than personal, family or household purposes, Gooch Farms does not possess a private right of action under the KCPA. *See Aud v. Illinois Central R.R. Co.*, 955 F.Supp. 757, 759 (W.D.Ky.1997) ("As noted in *Commonwealth ex rel Stephens v. North American Van Lines, Inc.*, Ky.App., 600 S.W.2d 459 (1979), the attorney general has broad discretionary powers to prosecute illegal business acts, however, an individual private cause of action [under the KCPA] may only be brought by 'any person who purchases or leases goods or services primarily for personal, family or household purposes.'"); *see also Skilcraft Sheetmetal, Inc. v. Kentucky Machinery, Inc.*, 836 S.W.2d 907, 909 (Ky.App.1992) ("To maintain an action alleging a violation of the [KCPA], ... an individual must fit within the protected class of persons defined in KRS 367.220.").

Gooch Farms argues that KRS 446.070 provides it a remedy. KRS 446.070 provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." The Court rejects this argument. KRS 446.070 creates a cause of action "only for those persons who belong to the class intended to be protected by the statute" allegedly violated. *Skilcraft*, 836 S.W.2d at 910 (citing *Hackney v. Fordson Coal Co.*, 230 Ky. 362, 19 S.W.2d 989, 990 (Ky. 1929)). Here, the class of persons intended to be protected by the KCPA consists of those persons who purchase or lease goods or services primarily for personal, household or family use. Since Gooch Farms does not fall within this class, summary judgment on this basis is proper. The Court need not address Defendant's other arguments on this issue.

DuPont notes that KRS 367.220(3), which is the portion of the KCPA authorizing a private suit for damages, provides that the court may award costs and attorney's fees to the prevailing party. DuPont requests that, upon dismissal of Gooch Farms' KCPA claim, the Court award DuPont costs and attorney's fees incurred in connection with this motion. The Court declines, however, to grant DuPont's request at this point in the litigation.

## V. CLAIM FOR PUNITIVE DAMAGES

DuPont also maintains that summary judgment is appropriate on Gooch Farms' claim for punitive damages. The Court agrees.

■ Under Kentucky common law, the standard for awarding punitive damages is gross negligence or a "wanton or reckless disregard for the lives, safety or property of others." *See Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 388, 389–90 (Ky.1985); *Illinois Central R.R. Co. v. Stewart*, 63 S.W. 596 (Ky.1901). Under KRS 411.184, Kentucky's punitive damages statute, punitives are available upon proof "by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the

plaintiff with oppression, fraud or malice." [2]

■ Under either standard, Gooch Farms has failed to set forth evidence to support its claim for punitive damages. First, the Court has already held that Gooch Farms cannot establish a prima facie case of fraud since Gooch Farms did not rely on Strawder's representations. Moreover, the record is devoid of evidence to support that DuPont acted with oppression or malice—either under the common law or statutory standard. Essentially, this is a "garden variety" products liability action in which the parties' dispute the cause of plaintiff's injuries. Gooch Farms' claims concerning Strawder's alleged mishandling of or tampering with crop samples are based on allegations which find no support in the record. Under these circumstances, DuPont is entitled to summary judgment on this issue.

The court having thoroughly reviewed the matter, having set forth its views above, and being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that the Motion for Partial Summary Judgment by Defendant, E.I. DuPont de Nemours & Company, is **granted.**

**2.** The statute defines "oppression" to mean "conduct which is specifically intended by the defendant to subject the plaintiff to cruel and unjust hardship." KRS 411.184(1)(a). "Fraud" is defined as "intentional misrepresentation, deceit, or concealment of material fact known to the defendant and made with the intention of causing injury to the plaintiff." KRS 411.184(1)(b). KRS 411.184(1)(c) defines "malice" as "either conduct which is specifically intended by the defendant to cause tangible or intangible injury to the plaintiff or conduct that is carried out by the defendant both with a flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct will result in human death or bodily harm." In a recent, not yet finalized opinion, the Kentucky Supreme Court held KRS 411.184(1)(c) unconstitutional and in violation of the jural rights doctrine, see 972 S.W.2d 260, 1998 WL 178674, at *11 (Ky. April 16, 1998), and affirmed that gross negligence is the appropriate standard for awarding punitive damages. *Id.* at *5.