Antoine **BELL, Plaintiff,**

v.

**CSX TRANSP., INC., Defendant.**

**No. 00–40264.**

United States District Court, E.D. Michigan, Southern Division.

Nov. 13, 2001.

Arvin J. Pearlman, Elaine L. Livingway, Pearlman & Pianin, Southfield, MI, for plaintiff.

Virginia F. Metz, Bernice M. McReynolds, Vercruysse, Metz, for defendant.

### *OPINION AND ORDER*

GADOLA, District Judge.

Before the Court is Defendant's motion for summary judgment [docket entry 28]. The Court entertained oral argument regarding this motion on October 10, 2001. For the reasons set forth below, the Court will grant in part and deny in part Defendant's motion.

## I  BACKGROUND

Plaintiff filed a complaint in the Circuit Court for the County of Wayne on June 1, 2000.  Under that complaint, Plaintiff alleges three causes of action.  First is that Defendant violated the Elliot–Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* ("the Act") by engaging in disparate treatment of Plaintiff because of his race.  Second is Plaintiff's claim that Defendant violated the Act when it intentionally discriminated against Plaintiff.  Third, Plaintiff claims that Defendant violated the Act by subjecting Plaintiff to a hostile work environment because of his race.  Defendant properly removed this action to this Court. As per this Court's order of May 14, 2001, this Court exercises diversity jurisdiction over this case.

Defendant is a transportation company that operates a rail yard in Dearborn, Michigan.  Plaintiff is a black man whom Defendant employed as a carman[1] at that rail yard from 1977 until June, 1997. Plaintiff has adduced evidence that he was subject to the following racially-discriminatory treatment during those years.  First, Plaintiff adduces his deposition testimony to the effect that, between 1993 and the end of 1996, someone placed a Ku Klux Klan poster in his locker at work and placed "hundreds" of such posters in Defendant's locker room.  (Bell Dep. at 369–70.)

Second, Plaintiff offers his deposition testimony to the effect that a fellow employee assaulted Plaintiff in Defendant's locker room during 1994 or 1995.  (Bell Dep. at 276–82; 293–96.)  According to Plaintiff's deposition testimony, this employee had started to call Plaintiff a "nigger," but caught himself and instead referred to Plaintiff with a racially-neutral slur.  (Bell Dep. at 297.)  According to Plaintiff's deposition testimony, Defendant never punished Plaintiff's attacker; instead, Defendant's foreman threatened to fire Plaintiff if Plaintiff demanded that his attacker face disciplinary action.  (Bell Dep. at 371–72.)  Plaintiff adduces evidence that his attacker, in light of Defen-

---

1.  A carman inspects railcars and sometimes performs minor repair work.

dant's inaction, later bragged that he was "able to get that nigger" with impunity.

Third, Plaintiff puts forth his deposition testimony to the effect that "[t]hroughout the 1990's" Plaintiff's co-workers subjected him to racist comments at work. (Pl. Resp. Br. at 2; Bell Dep. at 223; 224–25; 323.) Despite Plaintiff's complaints to Defendant's management and the management's overhearing some of these alleged comments, Plaintiff's deposition testimony indicates that Defendant took no action. To support this point, Plaintiff also adduces the testimony of a co-worker, Cedric McCarrall.

Fourth, Plaintiff offers his deposition testimony to the effect that, from 1995 through 1997, Defendant's management subjected him to a type of scrutiny to which it did not subject Plaintiff's white counterparts. (Bell Dep. at 130–31; 174; 289.) Plaintiff also adduces testimony from another of Defendant's employees, Paul Branum, to buttress this point.

Fifth, Plaintiff puts forth his deposition testimony and the deposition testimony of Mr. Branum to the effect that in "June of 1997," Defendant treated him differently because of race when it denied Plaintiff's request for two additional vacation days to attend funerals of his relatives. (Pl. Resp. Br. at 5; Bell Dep. at 264–58.) Defendant's uncontradicted evidence on this point, however, is that it did, in fact, provide Plaintiff with the two additional vacation days that he had requested. (Mahan Dep. at 56–58; 70.) Defendant admits that it provided Plaintiff with this vacation time after initially telling him that it would not do so.

Finally, Plaintiff offers the deposition testimony of Mr. McCarrall to the effect that Plaintiff's foreman tried to provoke Plaintiff into a fight, and then falsely claimed that Plaintiff threatened the foreman. (Pl. Resp. Br. at 5–6.)

## II  LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable

jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transportation Service, Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 150 (6th Cir.1995).

## III ANALYSIS

Defendant argues that Plaintiff's claims are time-barred. Causes of action under the Act are subject to a three-year statute of limitations. *Meek v. Michigan Bell Tel. Co.,* 193 Mich.App. 340, 483 N.W.2d 407, 409 (1991) (citing M.C.L. § 600.5805(8)). At oral argument, Plaintiff's counsel could only point to evidence in the record that would show that two alleged acts of discrimination occurred within the limitations period. Those allegations were (1) the alleged denial of two additional vacation days and (2) that Plaintiff's foreman tried to provoke Plaintiff into a fight, and then falsely claimed that Plaintiff threatened the foreman.

Plaintiff nonetheless argues that the remainder of his claims are not time barred because of the continuing violation doctrine, which the Supreme Court of Michigan has developed from federal courts. Under this doctrine, a plaintiff may sue on the basis of a defendant's actions that occurred outside of the limitations period if those actions were part of a continuing course of conduct. The Court will begin its analysis by deciding whether the continuing violation doctrine allows Plaintiff to sue on the basis of alleged conduct that occurred outside of the limitations period.

Whether a continuing course of discriminatory conduct exists depends upon factors that Michigan's Supreme Court set forth in *Sumner v. Goodyear Tire & Rubber Co.,* 427 Mich. 505, 398 N.W.2d 368 (1986):

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (*e.g.,* a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does

the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate.

*Meek,* 483 N.W.2d at 409 (quotation omitted).

■ A threshold requirement of the continuing violation doctrine is that Plaintiff "must show that at least one discriminatory act took place within the limitations period." *Jackson v. Quanex Corp.,* 191 F.3d 647, 667–68 (6th Cir.1999) (citation omitted). Assuming arguendo that the Court were to find that one or both of Plaintiff's allegations of discriminatory conduct within the limitations period were supported by competent evidence, the Court analyzes whether the remaining allegations fall within the continuing violation doctrine.

The Court turns to the first element delineated in *Sumner:* subject matter. This element would exist because all alleged acts of discrimination concern the same subject matter; i.e., they all pertain to race. *See Meek,* 483 N.W.2d at 409 (concluding that prong one was satisfied where all alleged acts of discrimination involved "gender and religion").

Regarding the second element, frequency, Plaintiff's allegations about racist comments throughout the 1990s might meet this prong, but that is unclear from Plaintiff's response. The same can be said of Plaintiff's allegations that Defendant tolerated the dissemination of Ku˙ Klux Klan posters and that Defendant subjected Plaintiff to heightened scrutiny because of his race. It is unclear from the response whether competent evidence shows that these things occurred frequently. The Court need not resolve this question, how-

ever, because the Court's assessment of the third element of the continuing violation doctrine is dispositive.

The third element of the *Sumner* test is degree of permanence/notice. Where a plaintiff had contemporaneously complained of the alleged acts of discrimination to a supervisor, those acts had a degree of permanence that should have informed the plaintiff of the need to vindicate his rights, and those acts therefore fall outside of the continuing violation doctrine. *See Joseph v. Department of Corrections,* No. 216509, 2000 WL 33418085, at *3 (Mich.Ct.App. June 23, 2000) (citing *Rasheed v. Chrysler Motors Corp.,* 196 Mich.App. 196, 493 N.W.2d 104 (1992), *rev'd on other grounds,* 445 Mich. 109, 517 N.W.2d 19 (1994)); *cf. Hollowell v. Michigan Consolidated Gas Co.,* No. 99–1754, 2001 WL 1006277, at *6 (6th Cir. Aug.24, 2001) (reasoning that the plaintiff's complaint to the EEOC showed that he was aware of the need to vindicate his rights). *See generally Martin v. Nannie & Newborns, Inc.,* 3 F.3d 1410, 1415 n. 6 (10th Cir. 1993) (explaining that the continuing violation doctrine is grounded in the equitable concept that a statute of limitations should not run until a reasonable person would be aware that his rights were violated).

Here, Plaintiff adduces evidence that shows that he complained to his supervisors about: (1) the Ku Klux Klan posters (Bell Dep. at 370:14–17); (2) the alleged assault (Bell Dep. at 372:2–13); (3) racist comments (Bell. Dep. at 325:3–21); and (4) scrutiny that his white counterparts did not face (Bell Dep. at 289). Accordingly, all of these acts fall outside of the continuing violation doctrine and are time barred.

The Court now turns to the question of whether Plaintiff may reach a jury on the basis of the alleged discriminatory acts

occurring within the limitations period. Those allegations were (1) the alleged denial of two additional vacation days and (2) that Plaintiff's foreman tried to provoke Plaintiff into a fight, and then falsely claimed that Plaintiff threatened the foreman.

As discussed above, Plaintiff asserts three causes of action: disparate treatment; intentional discrimination; and, hostile environment.

■ Under the Act, a prima facie case of disparate treatment requires a plaintiff to show that: (1) he was a member of a protected class; and (2) the employer treated him differently than it treated an employee who was not a member of the protected class for the same conduct. *Pitts v. Michael Miller Car Rental*, 942 F.2d 1067, 1070 (6th Cir.1991) (citations omitted).

■ A prima facie case of intentional discrimination requires a plaintiff to show that: (1) he is a member of a protected class; (2) he was discharged; (3) the person who discharged him was predisposed to discriminate against members of the plaintiff's protected class; and (4) the person who discharged him actually acted on that predisposition. *Id.* at 1070 n. 1.

■ Under either theory, the plaintiff's establishment of a facie case shifts the burden to the defendant to articulate a nondiscriminatory reason for its action(s). *Id.* If the defendant satisfies that burden of production, the burden shifts back to the plaintiff to show that the defendant's ostensible reasons were actually a pretext for discrimination. *Id.*

■ A hostile-environment claim requires a plaintiff to show that: (1) he belonged to a protected group; (2) he was subject to unwelcome communication or conduct on the basis of that protected characteristic; (3) the conduct or communication was intended to, or did, substantially interfere with his employment or created an intimidating, hostile, or offensive work environment; and (4) respondeat superior. *Chambers v. Trettco*, 463 Mich. 297, 614 N.W.2d 910, 915 (2000).

■ The Court considers first Plaintiff's allegation that Defendant denied him the two vacation days that he had requested. Plaintiff's counsel admitted during oral argument that Defendant had, in point of fact, allowed Plaintiff to take the vacation days. Nonetheless, Plaintiff has adduced evidence that Defendant did not approve Plaintiff's requested vacation days with the same alacrity with which it approved white employees' requests for vacation days. Instead, according to Plaintiff's evidence, Defendant gave Plaintiff the impression for roughly one day that it would not allow him to take the days off, before Defendant then permitted Plaintiff actually to take the vacation time. (Bell Dep. at 250–61.)

The question thus becomes whether Defendant's forcing Plaintiff to wait for roughly one day before it ultimately approved his request for vacation days is actionable under the Act. The Court is unaware of any binding authority on point. The weight of persuasive authority interpreting Title VII of the Civil Rights Act of 1964,[2] however, indicates that this alleged harm is *de minimis* and therefore not actionable. *See Elkins v. Pharmacy Corp. of Am.*, No. 00–1077, 2000 WL 962669 at *2 (4th Cir. July 12, 2000) (reasoning that "keeping [the plaintiff] waiting before meeting with her" was a *de minimis* harm not actionable under Title VII); *Yartzoff v. Thomas*, No. 81–599, 1989 WL 35873, at *3 (D.Or. Apr.14, 1989) (reasoning that "Title

---

**2.** The Court interprets the Elliot–Larsen Act and Title VII *in pari materia* for reasons dis-

cussed in *Micu v. City of Warren*, 147 Mich. App. 573, 382 N.W.2d 823, 827 (1985).

VII does not require a court to order relief where the injury was" *de minimis* ). *But see Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1561 (11th Cir.1986) (reasoning that "Title VII gives us no license to decide that any injury, however insignificant, may be regarded as" *de minimis* ).

The Court finds persuasive *Elkins* and *Yartzoff* for reasons set forth in those decisions and because those opinions comport with the common law of Michigan's rule of *de minimis non curat lex. See, e.g., Georgia–Pacific Corp. v. Central Park North Co.,* 394 Mich. 59, 228 N.W.2d 380, 382 (1975); *see also Koenig v. City of South Haven,* 460 Mich. 667, 597 N.W.2d 99, 104 (1999) (discussing statutory interpretation in light of the common law). Accordingly, this Court holds that Plaintiff may not recover under the Act for allegedly having to wait about a day before Defendant approved his request for vacation time.

■ The Court now addresses Plaintiff's final allegation: that his foreman tried to provoke Plaintiff into a fight, and then falsely claimed that Plaintiff threatened the foreman. This allegation cannot form the basis for Plaintiff's claim of disparate treatment because Plaintiff fails to adduce evidence that a non-black employee was treated differently for similar or the same conduct.

■ This allegation can, however, form the basis of Plaintiff's claims of intentional discrimination and a hostile environment. Regarding intentional discrimination, as the Court delineated above, Plaintiff must prove that: (1) he is a member of a protected class; (2) he was discharged; (3) the person who discharged him was predisposed to discriminate against members of his protected class; and (4) the person who discharged him actually acted on that predisposition.

The parties agree that Plaintiff is black and thus a member of a protected class. Plaintiff has adduced competent evidence that he was constructively discharged, thus meeting the second element. Specifically, Plaintiff has testified that he left Defendant's employ immediately after the incident with his foreman and the resulting accusation, and that he had to do so because he felt "that if [he] returned either something bad was going to happen or [he] was going to be falsely accused or possibly [have] criminal charges" pressed against him. (Bell Dep. at 373–74.) Because a reasonable person might feel compelled to resign in these circumstances, Plaintiff has created an issue of fact as to the element of a discharge or adverse employment action. *See Vagts v. Perry Drug Stores,* 204 Mich.App. 481, 487–88, 516 N.W.2d 102 (1994).

Regarding element three, Plaintiff has put forth competent evidence that his foreman was predisposed to discriminate against blacks. To wit, Plaintiff adduces his deposition testimony to the effect that his foreman had, for years, both participated in, and tolerated, comments that were insulting to blacks. (Bell Dep. at 215–21.) A reasonable jury could conclude from this evidence that Plaintiff's foreman had an anti-black animus and that this animus motivated the foreman when he (allegedly) constructively discharged Plaintiff. *See Graham v. Ford,* 237 Mich.App. 670, 604 N.W.2d 713, 718 (1999); *Harrison v. Olde Financial Corp.,* 225 Mich.App. 601, 572 N.W.2d 679, 683 n. 7 (1997) (imputing discriminatory comments of others to decision-maker). Accordingly, Plaintiff has created an issue of fact as to all of the elements of intentional discrimination under the Act. Because Defendant does not aver a nondiscriminatory reason for the foreman's alleged actions and accusation,[3]

---

**3.** Defendant instead grounds its defense in the argument that the foreman neither tried to provoke Plaintiff nor falsely accused Plaintiff of making threats (Def. Br. at 15).

the Court concludes that Plaintiff may reach a jury with his claim of intentional discrimination arising from his altercation with the foreman.

■ The alleged incident with the foreman also allows Plaintiff to reach a jury with his claim of a hostile environment. As discussed above, to prove a hostile environment, Plaintiff must establish that: (1) he belonged to a protected group; (2) he was subject to unwelcome communication or conduct on the basis of that protected characteristic; (3) the conduct or communication was intended to, or did, substantially interfere with his employment or created an intimidating, hostile, or offensive work environment; and (4) respondeat superior. It is evident from the evidence discussed in relation to Plaintiff's claim of intentional discrimination that he has adduced competent evidence to support the first three elements of this claim. As to the fourth element, respondeat superior, Michigan law imputes a decision to constructively discharge to the employer/defendant. *See Champion v. Nationwide Sec., Inc.,* 450 Mich. 702, 710, 545 N.W.2d 596 (1996). Furthermore, that Plaintiff's theory of a hostile environment would be predicated on just this one incident is no bar to relief. *See Vance v. Spencer County Public Sch.,* 231 F.3d 253, 259 n. 4 (6th Cir.2000). Accordingly, Plaintiff may reach a jury with his claim of a hostile environment.

## IV CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [docket entry 28] is **GRANTED** insofar as it pertains to Plaintiff's claim of disparate treatment under the Act.

**IT IS FURTHER ORDERED** that Plaintiff may reach a jury with his claims of intentional discrimination and a hostile environment under the Act, but only to the extent that these claims arise from the Plaintiff's alleged incident with his foreman in June, 1997.

SO ORDERED.